Scofield, J.,
delivered the opinion of the court:
The claimant, a subject of the King of Prussia, is the owner of certain bonds executed and issued by the Brunswick and Albany Railway Company to the treasurer of the State of Georgia, as trustee, which he alleges the United States have contracted to pay.
*304 The alleged contract is the outgrowth and result of the following facts, as stated in the petition:
“Prior to the year 1861 the Brunswick and Albany Railroad Company was a corporation duly organized under divers acts of the legislature of the State of Georgia, and had built and equipped and in running order about 65 miles of their main railroad. the track extending from the city of Brunswick, in the State of Georgia, to the village of Waresboro’, in the same State, and that said' track had been so built and equipped at a cost to the proprietors, who were chiefly residents of certain Northern States and of Europe, of about $1,800,000. That during the late war of the rebellion which followed the secession from the Union of the State of Georgia, and certain other Southern States, the said road was dismantled of its equipment, torn up and demolished by the authority of the then existing government of the State of Georgia, in connection with the Government of the Confederate States of America, and the property of said road was appropriated to the use of the State of Georgia and of the Confederate States, to the damage of the proprietors of said road, by reason of which they had a just claim against the State of Georgia for compensation for iron and other property wrongfully taken and converted or destroyed.”
March 18, 1869, the provisional legislature of the State of Georgia, which had been called into existence' under the several reconstruction acts of Congress, passed March 2, 1867 (14 Stat. L., 428), March 23, 1867 (15 Stat. L., 2), and July 19, 1867 (15 Stat. L., 14), after reciting iu a preamble the acts and undertakings of said State whereby it became bound in honor to make restitution, passed the following act:
11 Be it enacted, <&e., That it shall and may be lawful for the Brunswick and Albany Railroad Company to execute and deliver to the treasurer of the State of Georgia, for the time being, a deed of trust conveying to said treasurer and his successors in oflice all the rights, franchises, and privileges conferred upon said Brunswick and Albany Railroad Company by the several acts of the legislature of the State of Georgia in reference thereto, and all rights of way of said company on its main railroad through from the waters of Brunswick Harbor to Albany, and thence to the line of the State of Alabama, now possessed by said company, or hereafter to be acquired, and all the tracks, lines, and road-beds upon said main road, now graded or hereafter to be graded, and all real and personal property belonging or appertaining to said main road now owned by said company, or hereafter to be acquired by them, in trust and security for the ultimate payment to the holder or holders thereof of the principal and interest of the bonds of said company, amounting to the sum of $15,000 per mile upon said com *305 pany’s main railroad from tbe barbor of Brunswick to Albany and tbe line of the State of Alabama; said bonds to be of the denomination of $1,000 each, the principal sum payable in forty years, and bear interest at tbe rate of 6 per cent, per annum, payable semi-annually, and have coupons or interest warrants attached in accordance thereto; both principal and interest to be payable in coin, and at such place or places as may be specified in said bonds and deed of trust; said bonds to be executed by said company under the seal thereof; and the treasurer of-the State of Georgia, for the time being, is hereby directed to join with said company in the execution of said deed of trust, and he and his successors in office are hereby charged with execution of the trust contained therein ; said deed of trust shall be recorded in the proper offices for the record of deeds in the several counties through which said company’s main railroad is to pass.
“Sec. 2. As soon as said,Brunswick and Albany Railroad Company shall have built 20 consecutive miles of their said main railroad in a substantial manner, and shall have the same in good running and working order, which shall be certified to by an engineer appointed by bis excellency the governor of the State of Georgia for that purpose, the said company shall present to the treasurer of the State of Georgia, for the time being, the bonds of said company, such as are described in the first section of this act, amounting in the aggregate to $15,000 per mile upon the road so completed, and from time to time thereafter as often as said company shall -have completed any additional consecutive 10 miles of said main road, to be certified to as above, said company may present to said treasurer the bonds of said company, amounting to $15,000 per mile upon all of said company’s main road so'built, until the whole main road from the harbor of Brunswick to Albany and the line of the State of Alabama is built; and the said treasurer, for the time being, shall make an indorsement upon the back of each of said bonds, and shall sign the same as treasurer of the State of Georgia, which indorsement shall be as follows:
“ ‘I certify that the within is one of a series of bonds issued by the Brunswick and Albany Railroad Company, and amounting in the aggregate to the sum of $15,000 per mile upon said company’s main railroad, secured-by deed of trust upon said company’s main railroad, and all the real and personal property connected with the same, executed to the treasurer of the State of Georgia, as trustee, on the — day of-: — , A. D. 1869. The payment of the principal and interest of the within bond, according to the terms thereof, is hereby guaranteed by the State of Georgia, in pursuance of, and in obedience to, an act of the legislature of said State, passed the — day of-, A. D. 1869.’
“And shall fill up the two blanks in the indorsement, the first with tjie real date of the degd of trust, and the second with the date of passage of this act, and shall deliver the bonds so *306 certified and guaranteed .to the president of said company or other officer authorized by the board of directors of said company to receive the same; and the payment of the principal and interest of said bonds to the holders thereof, according to the terms thereof, is hereby declared to be guaranteed by the State of Georgia.”
In pursuance of said act, the company built and equipped 100 miles of road, and executed bonds to the amount of $1,500,000, which were duly indorsed by the State as provided in the act and negotiated by the company.
In 1870 the Senators and Representatives from the State of Georgia were admitted in Congress. Some time thereafter Georgia disavowed all liability for the payment of these bonds.
Subsequently, the company having defaulted in tbe payment of interest, the whole road and its equipment were sold under decree of court.
These facts do not disclose a' cause of action which this court is authorized to consider.
The claim is not founded upon any act of Congress, but upon an act of the provisional legislature of the State of Georgia; which act, whether valid or not as against the State, was neither authorized nor indorsed by Congress.
The act does not create an express contract with the United States, because, waiving the question of authority, the legislature did not profess to undertake to contract on their behalf, but only on behalf of the State of Georgia, but, most clearly, it was without authority to undertake anything more.
There was no consideration, past, present, or prospective, accrued or accruing to the United States, whereby a contract can be implied. They had not taken, used, or injured the company’s road. On the contrary, it had been taken and used by their enemies to carry on a war against them. Nor was the road to be rebuilt for the use of the United States, but entirely for the use and benefit of other parties. As the United States had no lot or partin the destruction of the road, so they had no special interest in its reconstruction.
If this legislature had the lawful right to pledge the faith of the State for the payment of these bonds, there can be no incidental or resulting liability upon anybody else. The liability, in that event, would be limited by and in accordance with the provisions of the act itself. If the legislature had no lawful right to enact the law, it is entirely void and binds nobody.
*307 Georgia denies the right of this legislature to bind the State, and repudiates the guaranty; whether rightfully or wrongfully, it is useless for us to inquire. If wrong has thus been done to the claimant, this court has no power to right it. Georgia, like all the other States of the Union, though unlike the United States, has failed to provide a court wherein controversies between itself and claimants can be judicially determined. Like all the other States, Georgia has reserved to itself the power to allow or reject, at its own free will, any claim, regardless of its character, which may be presented.
The claimant knew when he purchased these bonds that neither Congress nor any other body or person, authorized or unauthorized, had assumed to pledge the United States for their payment. He knew also, or ought to have known, that there was no power in the courts to consider or enforce this guaranty against the will of the State of Georgia.
The demurrer is sustained.
The claimant will be allowed twenty days in which to amend his petition. If no amendment is proposed within that time the case will be dismissed.